# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| **JUANITO CAMPOS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| *vs.* | ) | **Civil Action No.** |
| | ) | |
| | ) | **4:21-cv-90** |
| **ALLIANCE GLOBAL GROUP, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | **Jury Trial Demanded** |

## COMPLAINT

Comes Now Plaintiff Juanito Campos, by and through undersigned counsel, and submits the following claims in his Complaint against Alliance Global Group, LLC ("AGG"):

## PARTIES

1.      Defendant Alliance Global Group, LLC is a limited liability company existing under the laws of the State of Maryland.  As such, Defendant is a "person" as defined by 42 U.S.C. § 2000e(a) and 29 U.S.C. § 203(a).  Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 203(d).

2.      Plaintiff Juanito Campos is an adult resident citizen of the Middle District of the State of Georgia.  Juanito Campos is a male whose national origin is the Phillippines.  At all times material hereto, Plaintiff was an "individual" Defendant refused to hire within the meaning of 42 U.S.C. § 2000e-2(a)(1).  Plaintiff was a non-exempt "employee" within the meaning of 29 U.S.C. § 203(e)(1).

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over the claims set out hereinafter and the litigation thereof pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 216(b).

4.      The unlawful employment practices complained of herein occurred within the Middle District of Georgia, making venue proper under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1391, and 29 U.S.C. § 216(b).

## STATEMENT OF FACTS

5.      Plaintiff Juanito Campos is a Filipino male who AGG refused to hire when, on or about July 15, 2020, it was awarded the follow-on contract for Tactical Fleet Support Operators by the U.S. Army's Maneuver Center of Excellence Training and Support Services, Directorate of Training Sustainment, at Ft. Benning, Georgia.  Mr. Campos had worked for KBR Wyle Technological Solutions, LLC ("KBR"), the previous Army contractor for this procurement, for almost eight years.  The procurement was for the purpose of providing operation, maintenance support, and instruction in connection with Army tactical wheeled and tracked equipment.

6.      AGG responded to the Army's request for proposal by proposing a 10-person workforce to provide the instruction, preventive maintenance checks and services required by the contract.  AGG's plan was to hire the incumbent workforce used by the previous contractor, KBR, which would have included Plaintiff.

7.     On or about July 15, 2020, the Army awarded AGG the contract which had a start date of July 28, 2020.  Soon after the award of the contract, AGG's President, Conrad Ferrer, contacted KBR's Program Manager, Darrell Shelby, to inform him that AGG had been awarded the contract and that AGG intended to hire the incumbent workforce to perform the contract.  However, KBR had used a 12-person workforce to perform the contract and one employee had quit earlier, making the incumbent workforce an 11-person workforce.  As a result, one employee of the incumbent KBR workforce would not be hired by AGG to perform the follow-on contract.

8.     During Conrad Ferrer's conversation with Program Manager Darrell Shelby, which was joined by Team Lead Steven Mitchell, Ferrer requested Shelby and Mitchell to recommend which one of KBR's eleven employees should not be hired by AGG.

9.     On or about July 17, 2020, Shelby reported to Ferrer that he and Mitchell recommended that Plaintiff should not be hired by AGG.  To justify their recommendation, Shelby falsely reported to Ferrer that in the past, Plaintiff had frequently complained, frequently challenged instructions given by Shelby and Mitchell, challenged policy changes, and had a tendency to stir up discontent among the workforce.  Solely on the basis of the recommendations of Shelby and Mitchell, Ferrer decided on July 17, 2020, not to hire Plaintiff.  Ferrer made no effort to verify the information he had been provided by Shelby and Mitchell, conducted no interviews with the incumbent workforce, and did not even request any workforce performance information from KBR.

3

10.     At the time that Shelby made his and Mitchell's recommendation to Ferrer, Shelby and Mitchell were aware that, in July 2018, Plaintiff had inquired about his weekly accrual of sick leave during their employment with KBR.  Plaintiff contended that KBR was not in compliance with federal mandates regarding accrual of sick leave for parties that contract with the federal government.  When KBR took no action to correct Plaintiff's accrued sick leave, he complained to the U.S. Department of Labor about the perceived unlawful employment practice.

11.     Upon information and belief, when the Department of Labor inquired of KBR as to its sick leave accrual policy, Plaintiff's accrued sick leave was adjusted in compliance with federal mandates.  The accrued sick leave of several of Plaintiff's co-workers was also adjusted favorably to Plaintiff's co-workers as a result of Plaintiff's efforts.  This episode became one of the bases for Shelby's and Mitchell's retaliatory recommendation to Ferrer in July 2020, that Plaintiff not be hired by AGG to work on the follow-on contract.

12.     Contrary to the declarations of Shelby and Mitchell submitted by AGG in its position statement responding to Plaintiff's EEOC charge, Plaintiff never contended that sick leave could be used for any purpose and he never told any of his co-workers that sick leave could be used for any purpose.  In the June/July 2018 time frame, Plaintiff's contention was that sick leave could be used not only when the employee was sick, but also when the employee or his family member was sick, needed diagnosis, preventive care, or care, and for recovery from domestic violence care.  Plaintiff's contentions and inquiries in this regard

4

were viewed as negative behavior by Shelby and Mitchell.  This episode became an additional basis for Shelby's and Mitchell's pretextual recommendation to Ferrer in July 2020, that Plaintiff not be hired by AGG to work on the follow-on contract.

13.     During his employment over the years working on wheeled and tracked vehicles for KBR and other contractors, Plaintiff made a notebook during his personal time in which he placed summaries that he prepared of how to perform certain preventive maintenance checks and services on the wheeled and tracked vehicles that Plaintiff and his co-workers serviced.  Plaintiff's summaries were taken directly from the Technical Manuals for each wheeled and tracked vehicle on which Plaintiff and his co-workers performed service.  Plaintiff placed each summary page he prepared in a document protector inside his notebook so that they could be utilized even in the rain.  The Technical Manuals would often get wet and would have to be replaced.  Plaintiff and his co-workers utilized the notebook Plaintiff prepared when they performed service on wheeled and tracked vehicles.  Whenever updates were made to the Technical Manuals, Plaintiff updated his summaries to reflect each update. Mitchell referred to Plaintiff's prepared summaries as "cheat sheets."

14.     Contrary to Mitchell's declaration submitted by AGG in its position statement responding to Plaintiff's EEOC charge, Plaintiff never told Mitchell that Mitchell's instruction regarding how to perform certain maintenance tasks was wrong.  Neither Mitchell nor Shelby ever questioned Plaintiff or his co-workers about their use of the summaries Plaintiff prepared because they helped Plaintiff and his co-workers perform their work better

5

and more efficiently. The false report that Plaintiff told Mitchell that his instructions on how to perform certain maintenance tasks was wrong became an additional basis for Shelby's and Mitchell's pretextual recommendation to Ferrer in July 2020, that Plaintiff not be hired by AGG to work on the follow-on contract.

15.     Contrary to Mitchell's declaration submitted by AGG in its position statement responding to Plaintiff's EEOC charge, Plaintiff never challenged Mitchell's instructions on how a particular task should be performed even if the instruction was to implement a change from the way things had been done in the past.  Further, Plaintiff never stated that Mitchell's instructions were incorrect or inconsistent with the Technical Manual.  Instead, Plaintiff made suggestions in a collaborative manner in an effort to streamline operations without sacrificing mandated standards.  For example, in the early part of 2017, Plaintiff suggested a change in how he and his co-workers made certain that Army wheeled and tracked vehicles were combat ready after they were serviced with at least a 3/4 full tank of fuel.  Plaintiff perceived an unaddressed problem which arose from the increased volume of vehicles coming in for service and he made a suggestion in an effort to address and solve the problem. It was never Plaintiff's intention to suggest that his idea was better or that Mitchell's instructions were wrong.  The false report that Plaintiff challenged Mitchell's instructions on how to perform certain maintenance tasks became an additional basis for Shelby's and Mitchell's pretextual recommendation to Ferrer in July 2020, that Plaintiff not be hired by AGG to work on the follow-on contract.

## COUNT I

### Title VII Retaliation

16.     Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-15 of this Complaint as though fully set out herein.

17.     In reporting KBR's improper method of computing employee accrued sick leave to the U.S. Department of Labor, Plaintiff was opposing a reasonably perceived unlawful employment practice.  Plaintiff's actions in opposing an unlawful employment practice and reporting the same to the U.S. Department of Labor are statutorily-protected activities under Title VII.  As a direct result of his opposition to KBR's unlawful employment practices, Plaintiff suffered an adverse employment action when he was not hired by AGG to work on the follow-on contract.  This adverse employment action was causally related to Plaintiff's protected activity; it occurred within days of the report by Shelby and Mitchell to Ferrer of Plaintiff's protected activity, and immediately upon and after the award to AGG of the follow-on contract on the basis of Ferrer's decision in reliance on Shelby's and Mitchell's recommendation.  All adverse employment actions were motivated by Shelby's and Mitchell's retaliatory animus against Plaintiff which is chargeable against Defendant.

## COUNT II

## FLSA Retaliation

18.     Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-15 of this Complaint as though fully set out herein.

19.     In reporting KBR's improper method of computing employee accrued sick leave to the U.S. Department of Labor, Plaintiff was complaining about a perceived unlawful employment practice.  Plaintiff's complaint to the U.S. Department Labor about Defendant's unlawful employment practice is statutorily-protected activity under 29 U.S.C. § 215(a)(3), the Fair Labor Standards Act.  As a direct result of his complaint to the U.S. Department of Labor about KBR's unlawful employment practices, Plaintiff suffered an adverse employment action when he was not hired by AGG to work on the follow-on contract.  This adverse employment action was causally related to Plaintiff's protected activity; it occurred within days of the report by Shelby and Mitchell to Ferrer of Plaintiff's protected activity, and immediately upon and after the award to AGG of the follow-on contract on the basis of Ferrer's decision made in reliance on Shelby's and Mitchell's recommendation.  All adverse employment actions were motivated by Shelby's and Mitchell's retaliatory animus against Plaintiff which is chargeable against Defendant.

## COUNT III

### Title VII National Origin Discrimination

20.     Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-15 of this Complaint as though fully set out herein.

21.     Plaintiff was treated differently in the terms and conditions of his employment in that he was not hired by AGG to work on the follow-on contract because of the report by Shelby and Mitchell to Ferrer of false and pretextual information regarding his past job performance in violation of Title VII of the Civil Rights Act of 1964 because of his national origin as a Filipino.

22.     As a result of the actions of AGG, Plaintiff has been injured, suffered distress, humiliation, embarrassment, inconvenience, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

23.     AGG engaged in practices complained of herein with malice and/or reckless indifference to Plaintiff's federally protected rights and as a direct and proximate result, Plaintiff suffered damages.

24.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, injunctive relief, compensatory and punitive damages, and any other remedy available to him under the law is his only means of securing adequate relief.

26.     Plaintiff reserves the right to proceed with any and all claims which the facts averred in this Complaint support, pursuant to the notice pleading requirements of Federal Rule of Civil Procedure 8.

## PRAYER FOR RELIEF

WHEREFORE, the above premises considered, Plaintiff prays that this Court will assume jurisdiction over this action and enter a judgment against Defendant granting the following relief:

(a)     Finding that Defendant engaged in unlawful retaliation and/or discrimination against Plaintiff in violation of 42 U.S.C. § 2000e *et seq.* and/or 29 U.S.C. § 215(a)(3);

(b)     Awarding back-pay during all periods in which Plaintiff was unlawfully not hired from July 30, 2020, to the date of judgment in this case, including the value of all fringe benefits, as awardable by virtue of 42 U.S.C. § 2000e-5 and 29 U.S.C. § 216(b);

(c)     Front-pay beginning at the date of judgment and continuing until such time as Plaintiff can be expected to attain comparable or equivalent remunerative employment;

(d)     Compensatory damages for the loss of pension benefits, retirement benefits, future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, and/or loss of enjoyment of life;

(e)     Pre-judgment interest;

(f)     Punitive or exemplary damages;

(g)     Any other awardable damages which the Court deems appropriate;

(h)      Reasonable attorneys' fees and costs awardable under 42 U.S.C. § 2000e-5(k),

42 U.S.C. § 1988, and 29 U.S.C. § 216(b).

**JURY DEMAND**

Plaintiff demands trial by struck jury on all issues so triable.


Respectfully submitted this 4th day of June, 2021.

/s/ Barbara H. Agricola
Barbara H. Agricola

Counsel for Plaintiff

**OF COUNSEL:**

**AGRICOLA LAW, LLC**
127 South 8th Street
Opelika, Alabama 36804
Telephone: 334.759.7557
Facsimile: 334.759.7558
barbara@agricolalaw.com
www.agricolalaw.com